Filed 6/18/26  P. v. Dunbar CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHRISTOPHER JAMES DUNBAR,<br>    Defendant and Appellant. | C102300<br><br>(Super. Ct. No. 24FE003334) |

A jury convicted defendant Christopher James Dunbar of grand theft and possession of methamphetamine, fentanyl, and paraphernalia.  The trial court found true a prior strike conviction allegation and sentenced defendant to an aggregate six years in prison.

Defendant now contends the trial court should have relieved his defense counsel based on an irreconcilable conflict of interest.  The parties treat the claim as one of ineffective assistance of counsel.  We conclude that even if a conflict of interest existed, defendant has not demonstrated deficient performance or prejudice.  Accordingly, we will affirm the judgment.

BACKGROUND

After jury selection commenced, but outside the presence of the jury panel, the following exchange occurred:

1

"[Defense counsel]:  …  I don't know what it's called when the attorney makes the *Marsden*[1] motion, but the thing about what we do is -- and I appreciate your listening to me, Your Honor -- is that we have difficult clients.  And you have to make some leeway for that, but my tolerance for any type of disrespectful language or abuse is zero.  [¶] … [¶]

"THE COURT:  I think I see what's going on.  [Defense counsel], you're in a position where you do not feel you can represent your client because of a breakdown in the relationship?

"[Defense counsel]:  Correct, and it's not the first time.  I let it pass a couple times.  I figure – and you know, I have been doing this for a dozen years, and it comes with the territory.  But if it happens again, and again, and again --

"THE COURT:  Yeah.

"[Defense counsel]:  -- I have to say that I, myself, draw a line where that is not okay.

"THE COURT:  Okay.  So the question then for me at this point is then -- wow.  Does the Court then now appoint an attorney off the panel, in essence, declare a mistrial here because of the breakdown of the attorney-client relationship and put the matter back in home court for ID of appointed counsel and start the process over?

"Let's take a break.  Let's look -- I have never faced this issue before.  I haven't seen this issue."

After a recess, the following exchange took place:

"THE COURT:  On record.  Record will reflect counsel and Defendant are present outside the presence of the panel.

---

1  *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

2

"And [defense counsel], I'd like to explore this a little bit farther, but I want to make sure to stay completely out of the attorney-client communication privilege.

"So this sort of started sort of an indication that Mr. Dunbar wanted a *Marsden* motion. And then it seems to me that it's really not a *Marsden* motion, but a conflict of interest for your office, correct, for you, in other words, your representation of Mr. Dunbar? [¶] … [¶] [W]hat is the conflict such that, [defense counsel], you no longer feel you can represent Mr. Dunbar?

"[Defense counsel]: So Your Honor, Mr. Dunbar and I have had these type of conversations a few times before where -- and this is on the phone, where his dissatisfaction with his situation, he has to emotionally download that onto me. This is not a novel situation for a public defender as you can imagine. We deal with mentally and emotionally unstable people all the time, but it happens again, and again, and again, and I'm letting it slide.

"But today he comes to court, and he -- he has this paper that he wants to file. And of course I'm telling him not to do it, right, because for obvious reasons, that any type of communication, I like to know what it is about. And I also know that the point is moot. And he begins to insult me. It's not good, your doing helping me [*sic*], so on and so forth. Just insulting me, being emotionally abusive.

"And you know, I have been doing this for over a decade. Sometimes, public defenders, they get stabbed. Some of them get punched. Some of them get spat on, and I think that there's a level of this type of behavior where I can say, you know what, I don't think it's fair. I don't think that it's fair to ask me to work in those -- you know, that type of condition. And I don't think I can, nor do I feel safe with this type of behavior next to me."

The trial court said, "I think … you're declaring a conflict … between you and your client such that you do not feel comfortable [¶] … [¶] [a]nd cannot adequately represent him at this point?" Defense counsel responded, "Correct." Defense counsel

3

also said that because of defendant's issues, "I will be spending the majority of my time just dealing with this, both emotionally and intellectually. In fact, it impacted how I was doing my voir dire, how I'm thinking about this case strategically. [¶] The bulk of my energy then is spent managing his emotions, and I don't think that's helpful to him at all." The court said to defense counsel, "Really what I'm trying to nail down is whether or not you think the caliber of your service is being substantially diluted at this point given the nature of your relationship with the Defendant." Defense counsel responded, "I do."

The trial court said, "The record would reflect, or at least in my mind the record reflects that probably there is a conflict of interest now. And then the next step is what to do with that conflict of interest. [¶] I think it would be unwise to proceed and force your attorney-client relationship to continue."

The trial court said it would conduct further research, and it asked counsel for both sides to consult with their supervisors regarding next steps. Following a recess, defense counsel appeared in court with a supervising attorney from the public defender's office. The trial court asked defense counsel, "this morning when we were discussing your ability to continue representation and the possible conflict, are you satisfied now that if you're kept in the case, you can continue to represent your client effectively?" Defense counsel said, "Yes."

Defendant then made a motion pursuant to *Marsden, supra*, 2 Cal.3d 118. After considering defendant's concerns and defense counsel's responses to those concerns, the trial court denied the motion, explaining that defense counsel had properly represented defendant.

The jury found defendant guilty of grand theft (Pen. Code, § 487, subd. (a)),[2] misdemeanor possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)),

---

[2] Undesignated statutory references are to the Penal Code.

misdemeanor possession of fentanyl (Health & Saf. Code, § 11350, subd. (a)), and misdemeanor possession of paraphernalia (Health & Saf. Code, § 11364). The jury found defendant not guilty of unlawful driving or taking of a vehicle, buying and receiving a stolen vehicle, and a separate count of misdemeanor possession of paraphernalia.

Following a bench trial, the trial court found true a prior strike conviction allegation and aggravating circumstances. It sentenced defendant to four years (the middle term, doubled for the prior strike) for grand theft, a consecutive one year for possession of methamphetamine, a consecutive one year for possession of fentanyl, and a concurrent 180 days for possession of paraphernalia.

## DISCUSSION

Defendant contends the trial court should have relieved his defense counsel based on an irreconcilable conflict of interest. The parties treat the claim as one of ineffective assistance of counsel.

" 'A criminal defendant is guaranteed the right to the assistance of counsel by the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution. This constitutional right includes the correlative right to representation free from any conflict of interest that undermines counsel's loyalty to his or her client.' " (*People v. Rices* (2017) 4 Cal.5th 49, 65 (*Rices*).) " 'Conflicts of interest may arise in various factual settings. Broadly, they "embrace all situations in which an attorney's loyalty to, or efforts on behalf of, a client are threatened by his responsibilities to another client or a third person *or by his own interests*." [Citation.]' [Citation.] [¶] Although 'most conflicts of interest seen in criminal litigation arise out of a lawyer's dual representation of co-defendants, the constitutional principle is not narrowly confined to instances of that type.' [Citation.] Thus, a conflict may exist 'whenever counsel is so situated that the caliber of his services may be substantially diluted.' " (*People v. Hardy* (1992) 2 Cal.4th 86, 135-136.)

5

" 'For both state and federal purposes, a claim of conflicted representation is one variety of claim that counsel provided ineffective assistance. Hence, to obtain reversal of a criminal verdict, the defendant must demonstrate that (1) counsel labored under an actual conflict of interest that adversely affected counsel's performance, and (2) absent counsel's deficiencies arising from the conflict, it is reasonably probable the result of the proceeding would have been different." (*Rices, supra*, 4 Cal.5th at p. 65.)

To establish deficient performance, a "defendant must show that the conflict (a) existed and (b) had some palpable, real effect on the trial, i.e., the ' "actual conflict of interest adversely affected his lawyer's performance." ' " (*People v. Almanza* (2015) 233 Cal.App.4th 990, 1001-1002 (*Almanza*).) " 'In determining whether a defendant has demonstrated the existence of an actual conflict of interest satisfying the first prong of the analysis [, i.e., deficient performance], we consider whether "the record shows that counsel 'pulled his punches,' i.e., failed to represent defendant as vigorously as he might have had there been no conflict." ' " (*Id.* at p. 1002.) A reviewing court " 'must bear in mind … that when " 'a conflict of interest causes an attorney *not* to do something, the record may not reflect such an omission. We must therefore examine the record to determine (i) whether arguments or actions omitted would likely have been made by counsel who did not have a conflict of interest, and (ii) whether there may have been a tactical reason (other than the asserted conflict of interest) that might have caused any such omission.' " ' " (*Ibid*.)

As to whether a conflict of interest existed, defendant focuses on defense counsel's initial comments to the trial court. Shortly thereafter, however, defense counsel assured the trial court that he could effectively represent defendant. Defendant argues the change in position occurred because defense counsel was pressured by his supervisor to continue representation. It is true that the supervising attorney appeared in the courtroom, but there is no other evidence defense counsel was pressured into saying that he could effectively represent defendant.

6

Nevertheless, even if a conflict of interest existed, defendant has not demonstrated deficient performance or prejudice.  As to the former, defendant contends that deficient performance is established by a showing that defense counsel labored under an *actual* conflict of interest, as opposed to a theoretical one.  As we have explained, however, to prevail defendant must demonstrate not only that the conflict "existed" but also that it "had some palpable, real effect on the trial, i.e., the ' "actual conflict of interest adversely affected his lawyer's performance." ' " (*Almanza, supra*, 233 Cal.App.4th at pp. 1001-1002; see also *id*. at pp. 1002-1003 [the defendant met his burden by showing that defense counsel failed to call a relevant witness due to the conflict of interest]; *People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 310 [the defendant did not show any adverse effect on counsel's performance due to an assumed conflict].)  Defendant does not show how the asserted conflict resulted in deficient performance by his trial counsel, and thus his claim fails.  (Cf. *People v. O'Malley* (2016) 62 Cal.4th 944, 1002 ["Defendant relies on defense counsel's statements during the in camera hearings expressing doubt about his own ability to continue with the case, but he identifies no instance in which the alleged conflict actually affected counsel's performance. …  Accordingly, we reject defendant's claim."].)

Regarding prejudice, defendant asserts that because an actual conflict of interest existed, prejudice is presumed.  Defendant is incorrect.  The California Supreme Court has explained that a presumption of prejudice applies only to claims involving conflicts arising from multiple concurrent representation.  (*People v. Doolin* (2009) 45 Cal.4th 390, 428-429.)  "*Strickland* [*v. Washington* (1984) 466 U.S. 668] provides the appropriate analytic framework for assessing prejudice arising from attorney conflicts of interest outside the context of multiple concurrent representation." (*Doolin*, at p. 428; see *Almanza, supra*, 233 Cal.App.4th at p. 1007.)  Under *Strickland*, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland*, at p. 694.)  Defendant

7

contends that, even if not presumed, prejudice is established because defense counsel initially stated that the conflict affected his representation. Such an assertion falls far short of showing a reasonable probability that the outcome of defendant's trial would have been different but for the purported conflict causing unspecified errors.

## DISPOSITION

The judgment is affirmed.


/S/ _____
MAURO, Acting P. J.

We concur:



/S/ _____
RENNER, J.



/S/ _____
FEINBERG, J.